JAMES W. WARREN, *et al.,* v. TAMPA MORTGAGE INVESTORS Co., *et al.*

150 So. 738.
Division B.
Opinion Filed October 31, 1933.
Opinion on Rehearing Filed October 31, 1933.

Sutton, Tillman & Reeves, for Appellants;

Taliaferro, Morris & Carter, for Appellees.

BUFORD, J.—Appellants filed bill in equity to enjoin the prosecution of a suit to enforce the payment by complainants of certain alleged obligations and for accounting and for other relief.

On hearing, relief prayed was denied and the bill of complaint was dismissed.

The history of the case as is succinctly outlined by the appellee, is as follows:

"On December 1, 1926, Simms Properties, Inc., a corporation, was indebted to the appellee, Tampa Mortgage Investors Co., in the sum of $100,000.00. To secure the indebtedness Simms Properties, Inc., had duly executed and delivered to the appellee, a mortgage upon certain property, and this mortgage had been duly filed for record.

"Said Simms Properties, Inc., was then operated and controlled by one A. J. Simms and both Simms and said Simms Properties, Inc., had become heavily financially involved. Said A. J. Simms, about that time, requested the appellant, James W. Warren, to take legal title to the property covered by said mortgage and to hold said title for the benefit of Simms, and James W. Warren agreed to take title to the property upon the understanding that he did not obligate himself for the payment of the indebtedness secured by the mortgage above mentioned.

"The appellants, James W. Warren and G. C. Warren, his father, were then and are now in the business of purchasing and selling real estate and other kindred lines, and on the date aforesaid and prior and subsequent thereto, were closely associated with said A. J. Simms in the op-

eration of their business and financially interested in many of his real estate corporations. Said A. J. Simms had conducted with and for the appellants, a number of important transactions, confidential in their nature, to their entire satisfaction. The appellants reposed the utmost faith and confidence in said Simms and acted upon his business advices and requests without question, always leaving the details of any transaction entirely to the judgment and discretion of said Simms.

"Pursuant to the agreement of James W. Warren to take title to said real estate, A. J. Simms caused to be prepared, executed and recorded on December 1, 1925, a deed conveying the real estate to said James W. Warren. This deed contained a clause to the effect that the grantee assumed and agreed to pay the mortgage debt held by this appellee, but the presence of said clause in the deed was not then known to James W. Warren.

"On the same day that said deed was recorded, A. J. Simms caused to be prepared, a written agreement for execution by Simms Properties, Inc., James W. Warren and G. C. Warren, relating to the future management and disposition of said property, which agreement contained, among other things, a recital that James W. Warren had assumed said mortgage debt. The appellants both signed said agreement, but did not read it or know what it contained and did not learn that it contained said recital until later, the exact or approximate time of acquiring knowledge of it not being stated anywhere in the bill of complaint.

"The appellant, James W. Warren, took possession of said property, collected the rent accruing therefrom and made certain payments on the mortgage debt.

"In February, 1928, a default occurred under the terms of the mortgage and the appellee, Tampa Mortgage Inves-

tors Co. advised James W. Warren that it looked to him
for payment pursuant to his assumption contract, contained
in said deed. James W. Warren denied liability on his
part, and advised the appellee that in acquiring title, he
had specifically agreed with A. J. Simms and Simms Prop-
erties that he would not become personally liable for said
debt. The appellants then inspected said deed and learned
for the first time that it contained the assumption clause.

"The appellants requested A. J. Simms to consult their
attorneys for advice as to the personal liability of James
W. Warren, and Simms reported that their attorneys were
of the opinion that under the facts as stated, James W.
Warren was personally liable.

"The appellee was threatening to sue James W. Warren
for the debt and the appellants negotiated with the appellee
and secured a forbearance to institute such suit and a re-
duction in the amount of the annual principal payments
required by the terms of the mortgage, in consideration of
which the appellant, G. C. Warren, guaranteed in writing
the payment of the first $20,000 of the principal payments.
The appellants continued to perform on these terms until
August 18, 1931, when the unpaid balance of the debt ma-
tured and was not paid. At that time the appellant, G. C.
Warren, was in default as to payments due under his guar-
antee. The appellant, James W. Warren, again denied
liability and upon being told by A. J. Simms that the ap-
pellee had threatened to enter suit, laid the entire facts
before his then attorneys, who advised him that in their
opinion he was personally liable for the debt. After sev-
eral months, to-wit, on December 10, 1931, an agreement
was finally reached whereby this appellee on its part fore-
bore to enter suit either upon the main indebtedness or
upon the guarantee of G. C. Warren, or to foreclose its

mortgage, and granted an extension of time for several years for the payment of the indebtedness and reduced the rate of interest thereon from eight per cent. to six per cent.; in consideration thereof the appellant, James W. Warren, expressly promised in writing (Exhibit D to the bill of complaint) to pay the indebtedness as modified and. the appellant, G. C. Warren, on his part, executed a new. guarantee (Exhibit E to the bill of complaint) in modified form in the amount of the balance unpaid under his former. guarantee.

"Thereafter the appellants continued to make payments on the indebtedness, but at the time of the filing of the bill' of complaint, they had come to the conclusion that the assumption clause in the deed from Simms Properties to· James W. Warren, made over six years before, was not now and never had been binding upon him and had decided to make no ·further payments either on account of said assumption clause or on account of their subsequent prom-́ ises made to this appellee in 1931.

"The bill of complaint was then filed and a temporary restraining order obtained without notice.

"This appellee moved to dismiss the bill on the grounds. that the liability of the appellants to it depended upon independent contracts based upon sufficient consideration; that by the agreements made in 1931, the .appellants and ·this appellee had compromised and settled the dispute then˙ existing between them as to the liability of the appellants; and that the appellants by their course of conduct had estopped themselves and become barred by laches, waiver and ratification from now avoiding their liability to the appellee."

Chapter 14658, Acts of 1931, known as the Chancery·

Practice Act, abolished demurrers and provided by Section 33 thereof:

"Every defense in point of law arising upon the face of the bill, whether for misjoinder or non-joinder or by reason of insufficiency of fact to constitute a valid cause of action in equity, which might heretofore have been made by demurrer or plea, shall be made by separate motion to dismiss or by a motion to dismiss contained in the answer; and every such point of law must go to the whole of the cause or causes of action stated in the bill and such motion incorporated in the answer may be called up and disposed of before final hearing at the discretion of the court."

So, it is, that the motion to dismiss the equivalent to a demurrer to the bill of complaint.

We are not prepared to say that the bill of complaint contained no equity, but it did not allege sufficient facts to show that the complainants were entitled to the relief prayed.

Before the complainants would be entitled to the relief sought it would be necessary to allege and prove in addition to that which is alleged in the bill of complaint that G. C. Warren at the time when he made and executed his guarantee of the payment of debt that he did so solely because of his *bona fide* belief that his son, James W. Warren, was legally bound to pay the debt, when, in truth, and in fact, James W. Warren was not legally bound to pay the debt, and further to allege and prove that the obligee of that guarantee then and there knew the true facts to be such that the said James W. Warren was not legally bound to pay the debt, although the obligee may have been mistaken in regard to the legal liability of the said James W. Warren to pay the obligation under the known existing facts; and further that the obligee knew that such guarantee was made

by G. C. Warren solely because of the mistake of law concerning the legal liability of James W. Warren.

Before G. C. Warren could have relief upon the theory that his guarantee was without consideration, it must not only be shown that the guarantee was made by G. C. Warren solely because of his mistaken information and conception of the law as to the liability of his son, James W. Warren, but also that the obligee accepted the guarantee solely for the benefit of James W. Warren and then and there knew the facts to be such as in law would not bind James W. Warren for the payment of the original indebtedness from Simms to the obligee. If the guarantee made by G. C. Warren was for the purpose of procuring forbearance in behalf of A. J. Simms or Simms Properties, Inc., then such guarantee was for a valid consideration and G. C. Warren was bound by the same, although James W. Warren may not have been bound at that time on account of the inclusion of the assumption clause in the deed.

If the facts were such that G. C. Warren became bound on his guarantee above referred to then it follows, for that reason if for no other, that exhibits D and E above referred to, were executed for a valuable consideration and constituted valid obligation of James W. Warren and G. C. Warren, respectively, to comply with the terms thereof. But, when we look into the contents of Exhibit D we find that James W. Warren therein admits that he is the owner of the mortgaged property and, with this admission, and representation to First National Corporation, he entered into the following agreement:

"The time for the payment of the balance of said indebtedness of $80,000.00 is hereby extended so that the same shall become due and payable $1,000.00 on the 18th day of February, 1932, and the $1,500.00 semi-annually there-

after until August 18, 1935, at which time the entire unpaid principal balance shall become due and payable.

"The mortgagor covenants and agree to pay the principal amount of said indebtedness promptly at the times hereinabove set forth and to pay interest on the principal sums remaining from time to time unpaid at the rate of six per cent. per annum, from August 18, 1931, payable semiannually."

and, in consideration of this agreement, the National Corporation in the same paper writing agreed as follows:

"The mortgagor in consideration of said extension of time further covenants and agrees that all of the terms, conditions and agreements in the promissory notes and mortgage hereinabove described and not expressly altered by this extension agreement, shall continue in full force and effect, and that should any default be made in the performance thereof or in the performance of any of the covenants or agreements contained in this extension agreement, the mortgagee shall have the right at its option to consider the entire amount of said indebtedness as immediately due and payable and to proceed to collect the same by foreclosure or action at law, and that should foreclosure proceedings be instituted on account of any breach of violation of the covenants contained herein or in said mortgage deed that the mortgage shall have the right without notice to the mortgagor to make application for and to have a receiver appointed to take possession of and manage and control the mortgaged property pending foreclosure proceedings, for the purpose of renting, preserving or protecting the same, and applying the net income therefrom to the preservation and protection of the mortgaged property and to the payment of the mortgage indebtedness in such manner as the Court may direct."

This agreement having been entered into, G. C. Warren entered into the agreement marked Exhibit E and attached to the bill of complaint wherein and whereby he agreed to and confirmed the agreement entered into between James W. Warren and First National Corporation, in which agreement G. C. Warren included the following language:

"In consideration of my commitments under the former guarantee, the reduced rate of interest, your forbearance in not insisting on the payment at the present time of the two past due installments of $2,000 each, guaranteed by me, and the extension hereinabove referred to, I hereby guarantee that the installment payment of $1,000 and the six installments of $1,500.00 each on account of principal will be paid promptly as the same shall become due as herein specified. It is further understood that should defaults be made under the terms of the mortgage as herein extended, the installment payments herein guaranteed and at that time unpaid shall, at your option become at once due and payable and I agree to pay said unpaid installments within thirty days after notice of such default, independent of the said mortgage. It is further understood that you are authorized to waive any default which you may elect to waive, without affecting your rights under this guarantee.

"It is understood and agreed that my total obligation shall be the sum of ten thousand dollars."

The law is too well settled to admit of controversy that one may not accept the fruits of a contract and at the same time renounce, or repudiate, the burdens which that contract places upon him. And so it is, that it is immaterial whether or not James W. Warren was bound on the original assumption clause contained in the deed in the tri-party contract, or whether or not G. C. Warren because of the

mistake as to the legal liability of James W. Warren on such original obligation was bound by his first guarantee because in this last agreement James W. Warren assumes the ownership of the property conveyed to him under the deed containing the assumption clause and therein ratified his assumption of that obligation and at the same time G. C. Warren entered a new and different obligation based upon the conditions expressed in that latter contract between the original mortgagee and James W. Warren in which he declared himself to be the owner of the property and the mortgagor thereof.

It appears to us to be perfectly plain and elementary that by these two latter contracts the two Warrens completely estopped themselves from thereafter raising any question as to the binding effect of any former agreements. Therefore, the order appealed from must be affirmed. It is so ordered.

Affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

DAVIS, C. J., and ELLIS and TERRELL, J. J., concur in the opinion and judgment.

### ON PETITION FOR REHEARING.

PER CURIAM.—Upon consideration of appellants' petition for a rehearing of this cause it is ordered that the petition for rehearing be granted insofar as this Court has affirmed the decree of dismissal of the bill of complaint and that such decree of dismissal of the bill of complaint be vacated and set aside and that this cause be remanded to the Circuit Court with leave to complainants to file an amended bill of complaint if they can, which will be in conformity with the opinion in this Court filed May 9, 1933, which opinion is adhered to on this petition for rehearing as stating the law of this case. In all other respects (except as to the

dismissal of the bill of complaint), the decree appealed from is reaffirmed on this petition for a rehearing and the clerk directed to issue the mandate of this Court accordingly. It is so ordered.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.